# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| WESTERN EXPRESS, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   No. 07-1155-II |
| | ) |
| CNA INSURANCE and AMERICAN | ) |
| CASUALTY COMPANY OF READING, | ) |
| PENNSYLVANIA, | ) |
| | ) |
|     Defendants. | ) |

## PLEADINGS INDEX

| 01 | 05/22/07 | Complaint and Summons |
|---|---|---|
| 02 | 05/22/07 | Affidavit of Clarence Easterday |
| 03 | 05/22/07 | Affidavit of Isham B. Bradley |
| 04 | 05/22/07 | Motion for Temporary Restraining Order |
| 05 | 05/22/07 | Temporary Restraining Order |
| 06 | 05/22/07 | Order Setting Hearing<br>**Hearing Date: May 29, 2007** |
| 07 | 05/23/07 | Request for Introduction of Oral Testimony (Proposed Order attached) |
| 08 | 05/24/07 | Objection to Request for Oral Testimony |
| 09 | 05/25/07 | Memorandum in Support of Temporary Injunction |
| 10 | 05/25/07 | Ds' Memorandum in Opposition to Request for Preliminary Injunctive Relief |
| 11 | 05/25/07 | Affidavit of Jessica McKoy |
| 12 | 05/29/07 | Ds' Supplemental Memorandum in Opposition to Motion for a Temporary Injunctive Relief |
| 13 | 06/05/07 | Order dissolving Temporary Restraining Order |

| 14 | 06/08/07 | Amended Complaint |
|----|----------|-------------------|
|    |          |                   |
|    |          |                   |
|    |          |                   |
|    |          |                   |
|    |          |                   |

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **WESTERN EXPRESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Docket No. _07-1155-II** |
| | ) | |
| **CNA INSURANCE and** | ) | **Jury Demand** |
| **AMERICAN CASUALTY COMPANY** | ) | |
| **OF READING, PA** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

COMES now the Plaintiff, Western Express, Inc. and respectfully shows unto the court as follows:

1.     Western Express, Inc. ("Western Express") is a Tennessee corporation doing business in Nashville, Davidson County, Tennessee.

2.     CNA Insurance and its subsidiaries, American Casualty Company of Reading, PA and Continental Casualty Company (CNA) is an insurance carrier registered to do business in Tennessee. Service may be effected against the Defendants through the Tennessee Commissioner of Insurance. CNA provided Workers Compensation, General Liability and Auto (or Truckers) Liability

coverage to Western Express under policy nos. WC 2-57347649, auto TRK 2057317666 and general liability 2057347621.

3.    On or about May 21, 2007 Western Express filed a complaint with the Commissioner of Insurance a copy of which is attached as Exhibit A.

4.    The cancellation was in violation of the terms of the policies, which require a 60 day notice of cancellation for any cause other than nonpayment of premium. Western Express made timely payment of all premium amounts due under all three of the policies at all times during the term of the policies.

5    There was a dispute as to the amount of collateral required to be posted under the policies. Western Express maintains that at all times it kept the proper amount of collateral posted in accordance with the practice of the parties in prior years and in accordance with the documents executed by Western Express with respect to collateral requirements. CNA maintains that it could change the collateral requirement from that which is reflected in the documents executed by Western Express. CNA further maintains that collateral is premium, despite the fact that the policies define premium as the amounts paid for the policy apart from collateral. The change, or attempted change of collateral requirements by CNA was arbitrary and capricious.

2

6.     If collateral is premium, then the policies were canceled in violation of TCA 56-7-1806 which states:

56-7-1806.  Revision of rates.

(a) In the event an insurance company intends to increase the premiums of a commercial risk policy by an amount that is more than twenty-five percent (25%) and the increase in premium is the result of comparing policies of equivalent exposures, the insurance company shall mail or deliver to the named insured and producer at the address shown on the policy, not less than sixty (60) days prior notice of its intention to increase the premiums, specifying the percentage of the increase.

(b) Unless notice is provided as described in subsection (a), the insurer is required to extend the existing policy sixty (60) days from the date such notice is provided.

(c) The premium for the policy provided in such circumstances shall be not more than a pro rata basis of the existing policy.

7.     Defendants wrongfully cancelled the policies for "failure to provide collateral security."  The cancellation notice, a copy of which is attached as Exhibit B, was issued because Western Express  failed to post additional collateral.  Western Express posted collateral in an amount in accordance with the policy issued by CNA. CNA changed the method of calculation of required collateral after issuing the policy. If collateral is premium, as maintained by CNA, the change constituted an increase in premium.  The cancellation notice issued by CNA denominates the collateral as "premium".  An increase of premium more than 25% requires a 60 day notice.  No 60 day notice was given to Western Express.

3

8. Unless notice is given to Western Express meeting the requirements above, Defendants were required to extend the policy 60 days from date such notice was given. Defendants wrongfully violated the terms of the policy and Tennessee statutory provisions.

9. Western Express requests an award of damages in the amount of all premium paid during the policy year as to all three policies, a release of all collateral held by CNA (or a release of all collateral held in excess of reasonably needed amounts) and any other relief to which it may be entitled including penalties and damages for bad faith plus all its costs and attorneys fees under applicable law.

**WHEREFORE it is prayed,**

1. That this case be tried by a jury of twelve and that Western Express be awarded damages in the amounts requested herein.

2. That a judgement be entered for any additional relief to which Western Express may be entitled including penalties and attorneys fees under any provision of law.

3. That the costs of this cause be taxed to the defendant, and

4

4. For such other and further relief to which Western Express may be entitled.

Respectfully submitted,

Isham B. Bradley#5075
Roland M. Lowell #3874
7135 Centennial Place
Nashville TN 37209
(615) 259-9920
ibraddley@westernexp.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via facsimile and by depositing it in the United States mail, first-class, postage prepaid, addressed to the following:

Ronald G. Harris
Neal & Harwell, PLC
150 Fourth Avenue North, Suite 2000
Nashville, TN 37219

This 8th day of June, 2007.

Isham B. Bradley

5



**Consumer Insurance Services**
500 James Robertson Parkway, 4th Floor
Nashville, TN 37243-0574
(800) 342-4029 · (615) 741-2218
**FAX: (615) 532-7389**
CIS.Complaints@state.tn.us

| Received in office: | For Official Use Only |
|---|---|
| | Assigned: _____ |
| | File #: _____ |

Please complete this form and fax or mail it back to us. We will inform you of your assigned investigator once your file has been set-up. You may wish to provide documentation that supports your complaint. **Please do not send originals!**

## Complainant Information

| Prefix | ☒ Mr. ☐ Mrs. ☐ Ms. ☐ Dr. | | |
|---|---|---|---|
| First Name | CLARENCE | Last Name: | EASTERDAY |
| Business Name: | Include Business Name only if applicable: | | WESTERN EXPRESS, Inc |
| Street Address | 7135 CENTENNIAL PLACE | | |
| City | Nashville | State: Tn | Zip Code 37209 |
| Phone Numbers | Daytime/Alternate | 615-259-9920 | |
| Email Address | CEASTERDAY@WESTERNEXP.com | County (TN only) | DAVIDSON |
| Age Group | ☐ 50 to 64 ☐ Over 65 ☐ Not Applicable ☐ Under 25 ☐ 25 to 49 | | |
| Have you filed a lawsuit regarding this complaint? ☐ Yes ☒ No | | | |

## Insurance Information

| My Complaint is against: | ☒ my ins. co; ☐ my agent; ☐ other party's ins co; ☐ other: |
|---|---|
| Type of Coverage: | ☐ Auto; ☐ Homeowners; ☐ Life; ☐ Health; ☒ other: |
| Insurance Company: | CNA American Casualty Broker Co of Reading, | Agent: SETH MAXWELL |
| Date of loss or incident | 4/24/07 | Broker Agent's Phone No (if against agent) 615-771-9600 |
| If Policy was terminated: | Cancellation Date: 5/16/07 | Effective Date: |
| Adjuster's Name (if applicable): | | Insured (if not you): |
| Company Reference: | ☒ Policy; ☐ Claim number (provide one): | WC2057347C49 |

| Reason(s) for Complaint: | ☐ Claim Denial | ☐ Claim Delays | ☐ Low settlement offer |
|---|---|---|---|
| ☐ Premium & Rating | ☐ Premium Billing | ☐ Premium Refund | ☐ Information Requested |
| ☒ Cancellation | ☐ Non-renewal | ☐ Rate Classification | ☐ Policy Delivery |
| ☐ Other (Describe) | | | |

**EXHIBIT**
**4**

**Give a brief description of the problem**

Lack of Co. notice for Renewal/cancellation - SEE attached - TCA 56-7-1806 Requires 60 day notice when premium increases are greater than 25%. That notice was not given.

**What actions should be taken to resolve your complaint?**

Give appropriate notice

| If you are **not** the aggrieved party, what is your relationship to them? | Executive Vice President |
|---|---|

I declare that the information I've furnished is true and accurate.

| Signature: | Clauuth C. Girtur | Date: | 5/21/67 |
|---|---|---|---|

Fax Complaint Form 1105
IN-1520

# WESTERN EXPRESS, INC.
## WORKER'S COMPENSATION RENEWAL ISSUES

**INSURANCE CARRIER – CNA**
**INSURANCE BROKER – SETH MAXWELL/SCOTT INSURANCE – 771-9600**
**POLICY # - WC257347649**
**POLICY PERIOD – 9/1/06 TO 9/1/07**

- Western Express, Inc. renewed Worker's Compensation coverage effective 9/1/06.

- Western Express, Inc. received an Insurance Confirmation letter outlining renewal terms on approximately October 10, 2007.

- This confirmation letter, along with other written agreements, was reviewed by Western Express, Inc. The confirmation letter contained terms that were not part of the renewal discussions. Conversations were subsequently held between CNA and Scott Insurance and Western Express and CNA. The written documents contained a new method of determining collateral requirements. Western Express maintained that collateral was required in a manner consistently applied since November 2001. CNA maintained that they had fundamentally changed their business practices with all insured and collateral would be determined in a different manner than previous policy years and in a manner consistent with all of their other customers. In either case, the collateral requirement, as described in CNA's internal documents and the cancellation notice as premium, were greater than 25% increase from the previous year. Advance (60 day) notice was never provided to Western Express in accordance with the Tennessee Code Annotated 56-7-1806.

- Discussions continued for several months until April 2007. At this point, on April 24th CNA issued a cancellation notice. Western Express has continued to pay premiums in the manner established during previous policy periods.

- Western Express has a $1,000,000 deductible and moving coverage is a complicated process and difficult to accomplish in twenty-nine days (CNA agreed to a seven day extension that expires on May 23, 2007).

- Based on information provided by CNA Underwriter (Jessica McKoy), $7,700,000 additional collateral was required to continue coverage thru August 31, 2007. Collateral requirements based on the method used in all previous policy years required only $1,958,030 (based on 150% of outstanding reserves as of 4/30/07). CNA is canceling coverage after a 293% increase in collateral (premium).

- Western Express has repeatedly asked for meetings to discuss the collateral issues. All attempts, short of providing the demanded collateral, have essentially been rebuffed by CNA. Western Express has an almost six year history with CNA. As

of March 1, 2007, Western Express has paid more than $9,957,000 in premium and posted more than $9,000,000 in collateral.   Western Express has a .116 loss ratio (on an incurred basis).  Had we been provided the required notice, Western Express would never have renewed/continued coverage.

# NOTICE OF CANCELLATION OF INSURANCE

Named Insured & Mailing Address:

WESTERN EXPRESS INC
7135 CENTENNIAL PLACE
NASHVILLE TN 37209

Producer: 048589

SCOTT INSURANCE
840 CRESCENT CENTRE DR #100
FRANKLIN TN 37067

Policy No.: WC 2057347649
Type of Policy: WORKERS COMPENSATION POLICY
Date of Cancellation: 05/16/2007; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We are cancelling this policy. Your insurance will cease on the Date of Cancellation shown above.

The reason for cancellation is FAILURE TO PROVIDE COLLATERAL SECURITY
NONPAYMENT OF PREMIUM

You may request, in writing, the facts relied upon for this cancellation.

Named Insured

0124523621
WESTERN EXPRESS INC
7135 CENTENNIAL PLACE
NASHVILLE TN 37209

Date Mailed:
24th day of April, 2007

*Patricia Hurston*

PATRICIA HURSTON

EXHIBIT
B

AMERICAN CASUALTY COMPANY OF READING, PA
333 SOUTH WABASH AVENUE, 28 FL
CHICAGO IL 60604

Named Insured: WESTERN EXPRESS INC          Policy Number: WC 2057347649

This page is separate and independent from the notice given.
We are informing you that the following parties were notified of this action.

### PARTIES NOTIFIED

Named Insured
WESTERN EXPRESS INC
7135 CENTENNIAL PLACE
NASHVILLE TN 37209

Producer
SCOTT INSURANCE
840 CRESCENT CENTRE DR #100
FRANKLIN TN 37067

RECEIVED ✓

MAY 3 0 2007

Dav. Co. Chancery Court

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

WESTERN EXPRESS, INC.,    )
    )
    Plaintiff,    )
    )
vs.    )   No. 07-1155-II
    )
CNA INSURANCE and AMERICAN    )
CASUALTY COMPANY OF READING,    )
PENNSYLVANIA,    )
    )
    Defendants.    )

BY INTERCHANGE

## O R D E R

On May 29, 2007 came on for hearing Plaintiff Western Express, Inc.'s Motion for Temporary Injunctive Relief. The Court reviewed all the pleadings filed by the parties in this case, including the Complaint, Plaintiff's Memorandum in Support, two Affidavits of Mr. Clarence Easterday with accompanying exhibits, Defendants' Memorandum in Opposition, the Affidavit of Jessica McKoy with accompanying exhibits and Defendants' Supplemental Memorandum. After oral argument of counsel for both parties and consideration of the pleadings filed herein, this Court makes the following findings of fact and conclusions of law:

After balancing the four factors that the Court must balance on a request for temporary hearing, the Court has decided the restraining order previously entered herein should be dissolved.

The Court has reviewed Tennessee Code Annotated §§ 56-7-1802, 1803, 1804 and 1806 and provisions of the workers' compensation insurance policy at issue. The Court finds from Mr. Easterday's affidavit and from other written materials that were dated in August and September 2006 and March 2007 that CNA was requesting an increase in collateral that was

required to be posted to secure Western's obligations under the policy. The Court finds that Western Express knew about the increase CNA was requesting and received written notice of such increase. When Western Express refused to pay the increased collateral, CNA sent its notice of cancellation.

The Court further finds that the insurance policy at issue allows cancellation for non-payment of premium on ten days notice, not sixty days (as claimed by Western Express). The applicable statutes allow a ten-day cancellation notice when the reason for cancellation is non-payment of premium.

The Court finds from the facts presented and the definition of non-payment of premium found in Tennessee Code Annotated § 56-7-1802(2) that the collateral is part of the premium and therefore failure to post this collateral should be considered non-payment of premium for purposes of cancellation notice requirements. *In its pleadings, the plaintiff described the collateral requirement as premium or related to premium.*

In looking at the four factors, the Court finds that the substantial likelihood of success factor tips slightly towards CNA because the Court finds that CNA has given the notices that are required under the law and under the policy.

The Court finds that irreparable harm is not present in this case and that any potential harm that is going to occur has possibly already occurred because a cancellation has taken place and a notice of cancellation given.

The Court finds that the relative harm factor does not support granting the injunction because any future harm would be mostly monetary.

In this case the public interest is most served by the enforcement of the contract terms and the reasonable application of these statutes.

Accordingly, the Court finds that given the factors that must be balanced, the Court finds that the restraining order should be dissolved and declines to issue a temporary injunction. Injunctions are not to be awarded in doubtful cases. The Court must refuse an injunction unless a right is about to be destroyed or there is irreparable injury.

Findings of fact and conclusions of law made by the Court are not binding at the trial on the merits. University of Texas v. Camenisch, 451 U.S. 395 (1981). From an evaluation of the proof and the statutes, it does appear that Western Express failed to pay its premium, as the term is defined in the statute and that CNA gave adequate notice as required by law.

Based upon these findings of fact and conclusions of law, the Court hereby dissolves the temporary restraining order previously granted herein and denies Plaintiff's request for a temporary injunction. The temporary restraining order is dissolved effective May 29, 2007 upon the announcement of the Court's ruling.

It is so **ORDERED**.

Dated this _____ day of _____, 2007.

Claudia C. Bonnyman, Chancellor

**BY INTERCHANGE**

SUBMITTED FOR ENTRY:

NEAL & HARWELL, PLC

By: _____
    Ronald G. Harris, # 9054
2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219-2498
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

    I certify that I have sent a true and exact copy of the foregoing by facsimile and have

placed a true and exact copy in the United States mail, postage prepaid, addressed as follows:

        Isham B. Bradley, Esq.
        Roland M. Lowell, Esq.
        7135 Centennial Place
        Nashville, TN 37209
        Facsimile # (615) 312-0840

This _____ day of May 2007.

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| WESTERN EXPRESS, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-1155-II |
| | ) | |
| CNA INSURANCE and AMERICAN | ) | |
| CASUALTY COMPANY OF READING, | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
|     Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR A TEMPORARY INJUNCTIVE RELIEF

Comes now the Defendants CNA Insurance[1] and American Casualty Company of Reading, PA ("CNA") and submits this supplemental brief in opposition to Plaintiff's request for temporary injunctive relief. This brief is necessary because Plaintiff has materially changed its legal and factual theories in a Memorandum and new affidavit that were not served until the close of business Friday afternoon. Because of Plaintiff's late filing tactic and the intervening Memorial Day weekend, Defendants have not had adequate time or ability to fully respond to Plaintiff's new factual allegations before the hearing. Defendants submit this Supplemental Memorandum to address some of the new legal theories that Plaintiff is apparently going to argue at the hearing. In its Memorandum, Plaintiff now takes a position that is directly contrary to the theory it presented to the Court to obtain the temporary restraining order.

---

[1] There is no entity known as "CNA Insurance." "CNA is a service mark used by a group of insurance companies including American Casualty Company of Reading PA, the company which wrote the workers' compensation policies.

## AUTHORITY AND ARGUMENT

In its Complaint and in support of its request for a temporary restraining order, Plaintiff advised the Court that the sole basis for enjoining CNA's cancellation of Plaintiff's insurance policies was Tennessee Code Annotated § 56-7-1806 which dealt with intention to "increase the premiums" on commercial risk insurance. Plaintiff argued that the statute applied because the increase in the amount of collateral to be posted was an increase in premium.

After citing the statute, Plaintiff's Complaint specifically alleged as follows:

CNA changed the method of calculation of required collateral after issuing the policy. The change constituted an increase in premium.

(Emphasis supplied.) Complaint at ¶ 5. In its late Friday afternoon pleadings, Plaintiff now takes the opposite position. Plaintiff now claims that the collateral requirement does not mean "premium," completely contrary to what it told the Court to obtain the temporary restraining order. Plaintiff's Memorandum at 4.

The reason for Plaintiff's switch in positions is an attempt to rely upon a different statute and policy language and now argue the notice of cancellation was untimely (as opposed to notice of increased premium rates). Plaintiff now argues CNA was required to give sixty days notice of cancellation.

The problem with Plaintiff's new theories is that both the new statute that Plaintiff relies upon, Tennessee Code Annotated § 56-7-1083 and the policy provisions attached to Mr. Easterday's second affidavit do not apply to cancellations for non-payment of premium. This fully explains why, contrary to what is stated in its Complaint, Plaintiff now argues the collateral should not be considered as premium.

The definitional section for the chapter entitled "Cancellation of Commercial Risk Insurance," Tennessee Code Annotated § 56-7-1802(2), provides that,

> 'Nonpayment of premium' means failure of the named insured to discharge when due <u>any of its obligations in connection with the payment of premiums</u> on a policy of commercial risk insurance or any installment of such premium, whether the premium is payable directly to the insurer or its agents or indirectly under any premium finance plan or extension of credit.

(Emphasis supplied.)

It is undisputed that CNA has required Western Express to post additional collateral sufficient to secure the payments it will be required to make to CNA under the insurance policy at issue. As such, the posting of that collateral is clearly an "obligation in connection with the payment of premiums" within the statutory definition. The collateralization requirement is part of the consideration CNA received for agreeing to insure the risks under the policy. Failure to make those payments is clearly "non-payment of premiums" within the statute Plaintiff now relies upon.

Plaintiff's new reliance upon Tennessee Code Annotated § 56-7-1803 is unavailing because it specifically <u>excludes</u> cancellations based upon "non-payment of premium" [as defined in the statutory section that immediately precedes this section] and "violation or breach by the insured <u>of any policy terms or conditions</u>."[2] (Emphasis supplied.) It is undisputed that Defendants' cancellation was based upon Plaintiff's failure to discharge its obligations in connection with the posting of collateral and a violation of the terms and conditions of such policy. Therefore, Tennessee Code Annotated § 56-7-1803 does not preclude this cancellation.

Plaintiff's new theory that Defendants must provide sixty days for cancellation must fail for the same reason. The portion of the policy attached as Exhibit 1 to Mr. Easterday's second affidavit clearly provides that cancellation for non-payment of premium is permitted on <u>ten days</u>

---

[2] The underlined portion of the statute was omitted from Plaintiff's listing of exceptions. Plaintiff's Memorandum at 5.

notice. Defendants' cancellation was for non-payment of premium and gave Plaintiff much more than ten days notice (see Exhibit B to Plaintiff's Complaint).

Other Tennessee statutory definitions of "premium" also support the conclusion that the term "premium" includes all the "consideration" for the policy and "any collateral or security" posted to secure the obligations under the policy. For example, Tennessee Code Annotated § 56-47-102 relating to workers' compensation fraud defines "premium" as follows:

> (10) "Premium" means consideration paid or payable for coverage under an insurance policy. "Premium" includes any payments, whether due within the insurance policy term or otherwise, and deductible payments whether advanced by the insurer, or insurance professional and subject to reimbursement by the insured or otherwise, any self-insured retention or payments, whether advanced by the insurer or insurance professions and subject to reimbursement by the insured or otherwise, <u>and any collateral or security to be provided to collateralize obligations to pay any of the above.</u>

(Emphasis supplied.) The same definition is found in Tennessee Code Annotated § 56-53-101.

The collateral that Plaintiff is required to post clearly is "premium" for these purposes. Therefore Tennessee Code Annotated § 56-7-1803 and the sixty day provision in the policy are not applicable. Rather, the applicable policy provision and Tennessee Code Annotated § 56-7-1804, both provide that CNA may cancel for such reason on <u>ten</u> days notice. CNA's cancellation on April 24, 2007, effective on May 16, 2007 (and extended to May 23, 2007) is clearly not improper.


## CONCLUSION

The legal arguments found in Plaintiff's Memorandum submitted late Friday afternoon do not support Plaintiff's new arguments that the notice of cancellation was untimely or improper. None of the arguments made in Plaintiff's subsequent filing support an injunction against the cancellation.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: _Ronald G. Harris_
    Ronald G. Harris, # 9054
    2000 One Nashville Place
    150 Fourth Avenue, North
    Nashville, TN 37219-2498
    (615) 244-1713 – Telephone
    (615) 726-0573 – Facsimile

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I have provided a true and exact copy of the foregoing by hand delivery to:

    Isham B. Bradley, Esq.
    Roland M. Lowell, Esq.
    7135 Centennial Place
    Nashville, TN 37209

This 29th day of May 2007.

_Ronald G. Harris_

- 5 -

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

WESTERN EXPRESS, INC.,                    )
                                          )
        Plaintiff,                        )
                                          )
vs.                                       )    No. 07-1155-II
                                          )
CNA INSURANCE and AMERICAN                )
CASUALTY COMPANY OF READING,              )
PA,                                       )
                                          )
        Defendants.                       )

## AFFIDAVIT OF JESSICA McKOY

The undersigned, Jessica McKoy, after first being duly sworn states the Court as follows:

1.      I am employed by Continental Casualty Company as an underwriting consultant in the Total Transport Division and provide underwriting services to my employer and certain of its insurance affiliates and subsidiaries including American Casualty Company of Reading, Pennsylvania (Continental Casualty Company and American Casualty Company of Reading, Pennsylvania collectively "CNA"). My professional certifications include a Chartered Property Casualty Underwriter designation and an Associate in Reinsurance designation. My office address is 2435 Commerce Avenue, Duluth, Georgia  30096. I have been involved in discussions and negotiations between CNA and Western Express, Inc. regarding its insurance program. I have personal knowledge of the matters stated herein.

2.      For a number of years, CNA has provided an insurance program to Western Express, Inc. which included policies of workers compensation, general liability and automobile liability insurance. In connection with this insurance program, Western Express, Inc. is required to post collateral with CNA to secure payment of future amounts that would be owed to CNA under those policies. The amounts that Western Express will owe CNA under these policies are

Case 3:07-cv-00667   Document 1-1   Filed 06/20/07   Page 23 of 50 PageID #: 26

dependent upon the amounts of the losses that CNA is required to pay under claims made under the policies.

3.      For several prior years, the collateral that Western Express posted with CNA was based on a methodology of 150% of the outstanding reserves. When I examined the Western Express program in approximately April 2006, I determined that the collateral requirements for this account had not followed company policies and in fact had left CNA under-collateralized. At that time, Western Express, Inc.'s insurance policies were set to expire on September 30, 2006.

4.      Scott Insurance is the broker representing Western Express, Inc.. The persons at Scott Insurance who have represented Western Express, Inc. in its dealings with CNA include Seth Maxwell and Katherine (Katie) Molitor.

5.      On or about May 11, 2006, the Risk Manager for Western Express, Clarence Easterday, and his broker, Seth Maxwell, came to Chicago and met with CNA representatives to discuss the collateral issues that had been discovered. It is my understanding that in those discussions, CNA advised that CNA was short on collateral. After that meeting, we were asked to re-evaluate the collateral requirements for Western Express's program.

6.      Prior to the expiration date of the insurance policies, CNA made several proposals to Western Express regarding the collateral requirements. By a proposal dated July 31, 2006, CNA advised Western Express that for the renewal year the collateral requirement was an additional $7.6 Million. A copy of that proposal is attached as Exhibit 1 hereto. After further discussions, CNA sent a proposal that allowed Western Express to post $2.4 Million at the inception of the renewed policy. This amount was for the first quarter of the policy period with additional amounts to be determined and posted after quarterly reviews. (The collateral for the prior policy years would continue to be based upon the "150% of reserve" methodology.) The

2

proposal specifically stated that for the renewal year "we will calculate the collateral to ultimate expected losses less paid to date." These terms were communicated to Western Express's broker in a written proposal dated August 7, 2006 entitled "Insurance Proposal Letter – Option 3." A copy of that proposal is attached hereto as Exhibit 2. (The security provisions are found at pages 21-22.)

       7.     On August 31, 2006, Western Express's broker sent an e-mail to CNA that confirmed agreement on the proposed terms. A copy of that e-mail is attached hereto as Exhibit 3. In that e-mail chain is Clarence Easterday's request to the broker to bind this coverage for Western Express with CNA. Also in that e-mail chain is the notation that the proposal ("Option 3") was attached. As previously noted, that proposal included the provision that collateral calculation would be the ultimate loss methodology for the future year.

       8.     On or about September 13, 2006, CNA sent a confirmation letter to Western Express setting forth the terms of the renewal of the insurance program for the policy period September 1, 2006 to September 1, 2007. A copy is attached hereto as Exhibit 4. The cover sheet of that confirmation letter specifically advises that "No alterations in the confirmation may be made without the prior written consent of CNA." On page 23 of the confirmation letter, CNA specifically states that for the renewal period "we will calculate <u>ultimate expected</u> losses less paid to date as the method <u>for computing the collateral</u> to be posted." (Emphasis added.) At the same time, CNA also furnished Western Express with a Finance Agreement in connection with the renewal of insurance program. A copy of that agreement is attached hereto as Exhibit 5. That agreement also specifically provided that the collateral requirement would be calculated based upon the ultimate expected losses methodology. CNA received a signed copy of those documents back from Western Express. Mr. Easterday had crossed through the language in the Finance Agreement and Confirmation Letter that set forth the ultimate loss collateral calculation

and in its place inserted language that the required collateral "equal 150% of the loss reserves within the applicable deductible."

9.    CNA subsequently advised Western Express's broker in an e-mail dated November 1, 2006, that the changes Mr. Easterday had made in the agreement were not acceptable to CNA. A copy of that e-mail is attached hereto as Exhibit 64. CNA made subsequent communications that it expected Western Express to pay the additional amounts of collateral, with a payment due December 1, 2006.

10.    Western Express's broker requested an extension of time to make payment. CNA granted an extension until March 1, 2007, on the understanding that payment would be forthcoming. CNA received a letter dated February 15, 2007 from Western Express, Inc. signed by Mr. Easterday acknowledging the collateral review was to be done by March 1. A copy of that letter is attached as Exhibit 7.

11.    CNA has repeatedly made clear to Western Express that it was required to post additional collateral with CNA, and Western Express has continually failed to do so. CNA has had numerous discussions with Western Express and its representatives but has been unable to obtain the required collateral. By notice dated April 24, 2007, CNA notified Western Express that its insurance would be cancelled on May 16, 2007. It is my understanding that the parties agreed to an extension of such cancellation until May 23, 2007. A copy of the acknowledgement of the coverage extension is attached as Exhibit 8.

**FURTHER THIS AFFIANT SAITH NOT.**

Jessica McKoy

STATE OF GEORGIA     )
                               )

COUNTY OF GWINNETT )


Pat McDaniel
_____
Notary Public

My Commission Expires:

Notary Public, Gwinnett County, Georgia
My Commission Expires December 27, 2007

## CERTIFICATE OF SERVICE

I certify that I have provided a true and exact copy of the foregoing by hand delivery to:

      Isham B. Bradley, Esq.
      Roland M. Lowell, Esq.
      7135 Centennial Place
      Nashville, TN 37209

This _25th_ day of May 2007.

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

WESTERN EXPRESS, INC.,                  )
                                        )
    Plaintiff,      )
                                        )
vs.                                     )     No. 07-1155-II
                                        )
CNA INSURANCE and AMERICAN              )
CASUALTY COMPANY OF READING,            )
PA,                                     )
                                        )
    Defendants.     )

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

Defendants CNA Insurance[1] and American Casualty Company of Reading, PA (hereinafter collectively referred to as "CNA") file this Memorandum in Opposition to Plaintiff Western Express, Inc.'s (hereinafter referred to as "Western" or "Western Express") request for preliminary injunctive relief. As set forth in more detail herein, CNA's cancellation of Western's insurance policies based on that company's failure to post adequate collateral was entirely proper. The Tennessee statute which is Plaintiff's sole authority for its claim does not provide a valid basis for enjoining the cancellation of such policies. Plaintiff's request for a preliminary injunction should be denied and the temporary restraining order previously issued should be dissolved.

---

[1] There is no entity known as "CNA Insurance." "CNA is a service mark used by a group of insurance companies including American Casualty Company of Reading PA, the company which wrote the workers' compensation policies.

## PROCEDURAL BACKGROUND

On Tuesday, May 22, 2007, at 11:20 a.m., counsel for Western sent an e-mail to representatives of CNA stating that Western intended to seek a temporary restraining order at 2:00 that afternoon. A draft Complaint was attached to the e-mail but no affidavits or motion papers were furnished at that time.

Undersigned counsel appeared at the Chancery Court Clerk & Master's office at 2:00 p.m. and was served with a Motion for Temporary Restraining Order, a Complaint and Request for Temporary Restraining Order and Injunction and the affidavits of Clarence Easterday and Isham Bradley. No hearing was held on Plaintiff's request but a Temporary Restraining Order was issued granting a portion of the relief requested by Plaintiff and setting a hearing for Tuesday, May 29, 2007. By the terms of the Temporary Restraining Order, Defendant CNA is temporarily restrained from cancelling Western's worker's compensation insurance policy. This Memorandum and the Tuesday hearing will be Defendants' first opportunity to demonstrate that Plaintiff Western Express, Inc. is not entitled to preliminary injunctive relief or any other relief from this Court.

Plaintiff's sole legal basis for seeking to enjoin CNA's cancellation of the insurance policies at issue is its current claim that it failed to receive sixty days prior notice of an increase in premiums. Under the facts of this case, Plaintiff is not entitled to enjoin the cancellation of these insurance policies for this, or indeed, any other reason.

# FACTUAL BACKGROUND[2]

For a number of years, CNA had issued policies of insurance for Western for workers' compensation, general liability and automobile liability. In connection with this insurance program, Western is required to post collateral with CNA to secure payment of future amounts that would be owed CNA under the policies. The amounts that Western will ultimately owe CNA under these loss-sensitive policies are dependent upon the losses that CNA is required to pay for claims made under the policies. In prior years, Western posted collateral with CNA based upon a methodology of 150% of the outstanding reserves.

Western's insurance policies were originally set to expire on September 30, 2006. Several months prior to the expiration of those policies, CNA reviewed the status of the collateral for those expiring policies and determined that the collateral requirements had not followed company policies and that CNA was under-collateralized for Western's insurance program. CNA discussed this collateral issue with Western's representatives.

Beginning in May of 2006, CNA began discussing the collateral issue with Western Express. CNA made clear that any renewal of Western's insurance program would require Western to post a substantial increase in collateral. Throughout the summer of 2006, CNA made numerous proposals to Western Express for the renewal, all of which included increasing the collateral to be posted. By a proposal dated July 31, 2006, CNA advised Western Express that for the renewal year the collateral requirement would be an additional $7.6 Million (with $6.3 Million being owed after a credit for prior years). After further discussions, on August 7, 2006 CNA sent a proposal to Western Express's broker that would allow Western Express to post $2.4 Million at the inception of the renewed policies. This amount was for the first quarter of the

---

[2] The facts set forth herein are supported by the Affidavit of Jessica McKoy and accompanying exhibits submitted contemporaneously herewith.

policy period with additional amounts to be determined and paid after quarterly reviews. These terms were communicated to Western Express's broker in a written proposal entitled "Insurance Proposal Letter – Option 3." (A copy of that proposal is attached to Ms. McKoy's affidavit as Exhibit 2. The security provisions are found at pages 21-22.) This proposal specifically stated that for the renewal year "we will calculate the collateral to ultimate expected losses less paid to date."

On August 31, 2006, Western Express's broker sent an e-mail to CNA that confirmed Western Express's agreement on the proposed terms. (A copy of that e-mail is attached hereto as Exhibit 3 to Ms. McKoy's affidavit.) That e-mail chain includes Clarence Easterday's request to the broker to bind this coverage for Western Express with CNA. Also in that e-mail chain is the notation that the proposal ("Option 3") was attached.

After receiving Western Express's acceptance of the terms of the "Option 3" proposal, on or about September 13, 2006, CNA sent a confirmation letter to Western Express setting forth the terms of the renewal of the insurance program for the new policy period September 1, 2006 to September 1, 2007.[3] (Exhibit 4 to McKoy Aff.) The cover sheet of that confirmation letter specifically advises that "No alterations in the confirmation may be made without the prior written consent of CNA." On page 23 of the confirmation letter, CNA specifically states that for the renewal period "we will calculate <u>ultimate expected</u> losses less paid to date as the method <u>for computing the collateral</u> to be posted." (Emphasis added.) At the same time, CNA also furnished Western Express with a Finance Agreement in connection with the renewal of insurance program. (Exhibit 5 to McKoy Aff.) That agreement also specifically provided that

---

[3] Although the existing policy was to expire on September 30, 2006, CNA agreed to start the new policy on September 1, 2006 at Western Express's request.

the collateral requirement would be calculated based upon the ultimate expected losses methodology.

Despite the statement in the confirmation letter that the program could not be altered with out CNA's prior consent, when CNA received a signed copy of those documents back from Western Express, Mr. Easterday had crossed through the language in the Finance Agreement and Confirmation Letter that set forth the ultimate loss collateral calculation and in its place inserted language that the required collateral "equal 150% of the loss revenues within the applicable deductible." CNA subsequently advised Western's broker (in an e-mail dated November 1, 2006) that the changes Mr. Easterday had attempted to make were not acceptable to CNA. (Exhibit 6 to Ms. McKoy Aff.)

CNA repeatedly communicated that it expected Western to post the additional collateral, with the next installment due December 1, 2006. Western's broker requested an extension of time to make such payment. CNA agreed to an extension on the collateral until March 1, 2007, believing that Western intended to comply. Western did not post the additional collateral and has continued to fail to do so.

By notice dated April 24, 2007, CNA notified Western that its insurance would be cancelled on May 16, 2007. (The Notice of Cancellation for the workers' compensation insurance is attached as Exhibit B to Plaintiff's Complaint.) The parties agreed to an extension of such cancellation until May 23. (Exhibit 8 to McKoy Aff.) On May 22, Plaintiff sought to enjoin cancellation of its insurance by filing its Complaint and Request for Temporary Restraining Order.

## AUTHORITY AND ARGUMENT

Rule 65.04 of the Tennessee Rules of Civil Procedure only allows for a temporary injunction during the pendency of an action,

> . . . if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts and omissions of the adverse party will tend to render such final judgment ineffectual.

### A.    Plaintiff Cannot Show Any Of Its Rights Are Being Or Will Be Violated.

The only "right" that Plaintiff claims to have been violated is the right to receive 60 days notice of an increase in premium, relying upon Tennessee Code Annotated § 56-7-1806.  That statute is the sole legal basis for Plaintiff's challenge to CNA's cancellation of the Plaintiff's insurance.  See Plaintiff's Complaint at ¶¶ 4-5.  That statute provides as follows:

> (a) In the event an insurance company intends to increase the premiums of a commercial risk policy by an amount that is more than twenty-five percent (25%) and the increase in premium is the result of comparing policies of equivalent exposures, the insurance company shall mail or deliver to the named insured and producer at the address shown on the policy, not less than sixty (60) days prior notice of its intention to increase the premiums, specifying the percentage of the increase.
>
> (b) Unless notice is provided as described in subsection (a), the insurer is required to extend the existing policy sixty (60) days from the date such notice is provided.
>
> (c) the premium for the policy provided in such circumstances shall be not more than a pro rata basis of the existing policy.

Plaintiff's entire claim is based upon its allegation that it did not receive sixty days prior notice of an increase in premium.[4]  Plaintiff cannot dispute that it has failed to post the amount of collateral that CNA was requiring it to post for the insurance coverage it was receiving.  Plaintiff

---

[4] The parties do not dispute that the collateral at issue is within the applicable definitions of premiums for the purposes of this motion.

is attempting to use this lawsuit to obtain an extension of its insurance coverage without making the required payments.

The facts belie Plaintiff's claims. It is clear that Western has had plenty of <u>notice</u> of the collateral payments that CNA was expecting to receive under the renewed policies. CNA began discussing the requirements for increased collateral as early as May of 2006—more than a year ago. On July 31, 2006, CNA informed Western that the collateral requirements would be an additional $7.6 Million. On August 7, 2006, CNA made its "Option 3" proposal describing the collateral requirements in detail. Although he fails to mention the fact that he received the notice on July 31, Mr. Clarence Easterday's affidavit states that "CNA increased collateral more than 25% requiring 7.7 million dollars additional collateral to continue coverage through August 31, 2007." Easterday Affidavit at ¶ 5. Negotiations with Western resulted in CNA agreeing to accept $2.4 million at inception, with collateral to be paid in quarterly payments after quarterly reviews.

Subsequently, the Confirmation Letter (Ex. 4 to McKoy Aff.) sent to Western on September 13, 2006 confirms the parties' agreement on the collateral payments due and that the methodology going forward was to be "ultimate expected losses" (<u>Id.</u> at 23). The Finance Agreement sent the same day also contains these terms and also states that for the policy period 9/01/06 – 9/01/07 will be computed according to "ultimate loss" methodology (Ex. 5 to McKoy Aff. at 9-10). Western cannot claim it did not receive such documents or claim that it was unaware of these provisions, since Mr. Easterday signed the documents on behalf of Western and struck through the express provisions concerning the method of computing collateral.

Western has sought and obtained extensions of time and other concessions from CNA regarding posting the additional collateral. There is no basis to claim Western did not receive

notice of such requirements. Its actual notice of the increased collateral requirements dates back to July, August, September and October 2006 and continued thereafter. Western is not entitled to any additional time period or additional notice and therefore not entitled to an injunction.

The date of the cancellation notice is not the appropriate date to compute the statutory time period for the notice at issue in this case. The statute that Western relies upon refers to notice of revised rates, not notice of cancellation.

Likelihood of success on the merits is one of the most significant factors in determining appropriateness of injunctive relief. E.g., Gibson v. Sallee, 648 F. Supp. 54 (M.D. Tenn. 1986). An injunction to maintain the status pending a suit at law will not lie if the suit involves disputed and doubtful questions. Nashville C & St. L. Ry. v. Railroad and Public Utilities Commission, 32 S.W.2d 1043 (Tenn. 1930). Plaintiff's sole legal ground for attempting to enjoin the cancellation of the workers' compensation insurance is the alleged lack of notice of an increased premium—in this case increased collateral requirements. Plaintiff has no likelihood of success on the merits of that issue and accordingly should not be allowed to enjoin cancellation of the insurance policies at issue.

B.      Plaintiff Has Failed To Demonstrate Irreparable Harm.

To justify equitable relief on the ground that irreparable injury will result unless relief is granted, the injury must be real and practically unavoidable and certain. E.g., State ex rel. Agee v. Chapman, 922 S.W.2d 516 (Tenn. App. 1995). Western has attempted to prove irreparable injury solely through the predictions and opinions of its Executive Vice-President for Operations, Mr. Easterday. The alleged harm set forth in Mr. Easterday's affidavit primarily relates to alleged reputational harm and a belief that other insurers will not provide quotes for coverage or

that it will be unable "to obtain insurance at favorable rates." These scenarios are all based upon what Mr. Easterday believes will happen if other carriers learn Western's insurance with CNA was cancelled rather than any specifically set forth actual incident.[5] The harm postulated in Mr. Easterday's affidavit is speculative and not certain to occur. Plaintiff has not met its burden to show irreparable harm.[6]

In addition, the predicament Western finds itself in at the end of May 2007 is largely of its own making. Generally, injunctions will not issue to relieve a party from a situation brought about by that party's own acts or omissions. Van Hooser v Warren County Bd. of Education, 807 S.W.2d 230, 238 (Tenn. 1991). This is not a situation that arose overnight or without Western's certain knowledge of the consequences of its actions. Western has been aware of CNA's intent to increase the collateral requirements on any renewed policy for more than a year, and has obtained numerous extensions of time to comply with the terms of the agreement, but has nevertheless continued to refuse to pay CNA the required amounts of collateral. If Western had no intention of posting such collateral, it could have and should have sought in timely manner to obtain other insurance coverage.


C.    Defendants Will Be Harmed If The Injunction Is Granted.

CNA should not be required to extend coverage without getting the required collateral payments from Western. Western has not posted sufficient collateral and CNA should not

---

[5] In fact, Western's broker advised CNA that as of May 1, 2007, they had three quotes from other insurors.

[6] If Plaintiff had a viable legal claim against Defendants (which it does not), and damages actually occurred based upon some actionable conduct, its remedy would be to bring claim to collect a monetary damage award. Injury which has adequate remedy at law is not irreparable. E.g., Fort v. Dixie Oil Co., 95 S.W.2d 931, 170 Tenn. 464 (Tenn. 1936).

continue to incur liability for Western's claims while Western refuses to adequately collaterize for future payments.

If CNA is required to continue to provide coverage under an injunction (which CNA contends would not be warranted), this Court should require that Western post a substantial bond. Rule 65.05 of the Tennessee Rules of Civil Procedure specifically provides that,

> No restraining order or temporary injunction shall be granted except upon the giving of a bond by the applicant with surety in such sum as the court to whom the application is made deems proper for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been wrongfully restrained.

Plaintiff argues for no bond, alleging it already has monies posted with CNA. It should be remembered, however, that CNA has already determined that it is under-collaterized for Western's insurance. CNA still has a responsibility to pay claims occurring in prior policy years and before cancellation. The amount already posted is not relevant to the setting of an injunction bond.

CNA has informed Western for many months that it expects Western to post the additional collateral for the potential losses it may have to pay. If Western is allowed to continue the insurance coverage it should be required to post a significant amount of money as a bond for such an extension.


## CONCLUSION

Plaintiff is not entitled to enjoin the cancellation of its insurance policies. The temporary restraining order issued in this case should be dissolved.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: _Ronald G Harris_

Ronald G. Harris, # 9054
2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219-2498
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I have provided a true and exact copy of the foregoing by hand delivery to:

Isham B. Bradley, Esq.
Roland M. Lowell, Esq.
7135 Centennial Place
Nashville, TN 37209

This 25th day of May 2007.

_Ronald G Harris_

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

WESTERN EXPRESS, INC.,                    )
                                          )
    Plaintiff,                            )
                                          )
v.                                        )       Docket No 07-1155-II
                                          )
CNA INSURANCE and                         )
AMERICAN CASUALTY COMPANY                 )
OF READING, PA                            )
                                          )
    Defendants.                           )

RECEIVED

MAY 2 9 2007

NEAL & HARWELL

## MEMORANDUM IN SUPPORT OF TEMPORARY INJUNCTION

### RELIEF REQUESTED

COMES now the Plaintiff, Western Express, Inc. ("Western") and pursuant to Rule 65.04 of the Tennessee Rules of Civil Procedure, respectfully moves the Court to extend the Temporary Restraining Order by issuing a Temporary Injunction enjoining Defendants, CNA Insurance ("CNA"), and their agents, servants, employees, consultants, officers, directors, attorneys, affiliates, successor, and assigns, and any other individual or entity within their control and supervision, and all persons or entities acting in concert or on their behalf or participating with them; (1) to make any attempt to cancel or otherwise terminate the policies of workers' compensation Western; (2) from taking any other action in connection with said policies except such action as CNA would take in connection herewith in absence of any cancellation or other termination, pending further Orders of the Court.

In support of this motion, Plaintiff submits that there is a substantial likelihood that it will prevail on the merits of this action and Western has suffered, is suffering, and will continue to suffer immediate and irreparable harm if the Temporary Injunction herein requested is not granted to extend the Temporary Restraining Order.[1]

### FACTS

CNA Insurance and its subsidiary American Casualty Company of Reading, PA (CNA) provided three policies of insurance to Western Express. CNA provided workers' compensation coverage under policy No. WC-257347649, auto insurance under TRK 2057317666 and general liability under policy GL 2057347621.

Western Express filed its Complaint with this Court alleging wrongful cancellation. This Court issued a Temporary Restraining Order to keep the workers' compensation policy in effect until further orders of this Court.

Western Express has paid its premiums for the insurance policies issued by CNA. The workers' compensation premiums ran approximately $67,000.00 per month and then decreased to $38,000.00 per month (due to increase in deductible.) Western Express posted collateral to cover claims in an approximate amount of $9,000,000.00. See Affidavit of Easterday.

---

[1] Western elects to pursue damages in connection with wrongful cancellation of its Auto policy TRK 205731766 and it general liability policy GL 2057347621. See Kentucky Home Mut. Life Insurance co. v. Rodgers, 196 Tenn 641, 270 S.W. 2d 188 (S. Ct. TN 1954)

2

The policies were cancelled on less than 60 day notice. By Notice of Cancellation of Insurance mailed the 24th day of April 2007 (received several days later) CNA cancelled all three policies cancellation to be effective May 16, 2007. The date of effective cancellation was extended seven days to May 24. The cancellation of the workers' compensation policy has been enjoined by this Court's Temporary Restraining Order.

The Notice of Cancellation purported to cancel the policy for failure to post collateral. Western never agreed to the collateral increase. See Affidavit of Easterday. It is uncontroverted that Western has paid the premiums. See affidavit of Easterday.

ARGUMENT

**The policy requires, before cancellation, a sixty day notice to be provided to Western Express.**

The workers compensation insurance policy issued by CNA's affiliate American casualty Company of Reading Pennsylvania, at the 17th page of the policy entitled: "Cancellation By Us" states:

> This endorsement amends the Workers Compensation and Employers Liability Insurance Policy to which it is attached.
>
> Paragraph 2 of D. Cancellation is replaced by the following:
>
> 2. We may cancel this policy by mailing or delivering to you written notice of cancellation at least:
> a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
> b. 60 days before the effective date of cancellation if we cancel for any other reason.
> Mailing that notice to you at your mailing address shown in item 1

3

of the information page would be sufficient to prove notice.

The premiums for insurance have all been paid by Western. See affidavit of Easterday. The Notice of Cancellation makes clear that the reason for cancellation is failure to provide increased collateral.[2]

Premium is payment for the policy. Premium is the consideration paid for the policy. Collateral is not payment for the policy. T.C.A 56-7-1802 defines "non-payment of premiums."

> "(2) Nonpayment of the premium means failure of the named insured to discharge when due any of its obligations in connection with the payment of premiums on a policy of commercial risk insurance or any installment of such premium, whether the premium is payable directly to the insurer or its agents or indirectly under any premium finance plan or extension of credit." Emphasis added.

Collateral is not retained by the insurer.     Collateral is the security posted to cover claims. Collateral is not premium.

The fourth page of the workers compensation policy sets forth the estimated amount of premium for the year of $402,695.00. The policy does not call collateral premium. Under the terms of the policy, the notice of cancellation, attached as exhibit B to the complaint, dated April 24, 2007 purporting to cancel the policy on May 16, 2007 (which was later extended to May 23, 2007) is not in compliance with the terms of the policy.

---

[2] Requirements to post additional collateral is contested by Western and later argument regarding increase in collateral

4

## T.C.A. 56-7-1803 precludes cancellation of Western's policy.

T.C.A. 56-7-1803 precludes cancellation of Western's policy. Western's policy has been in effect for more than 60 days. As provided in T.C.A. 56-7-1803:

"Prerequisites for effective notice of cancellation. - After a commercial risk insurance policy has been effect for sixty (60) days (60), or, if the policy is a renewal, effective immediately, no notice of cancellation shall be effective unless is based on the occurrence, after the effective date of the policy, of one (1) or more of the following:

1. Nonpayment of the premium...
2. Conviction of a crime...
3. Discovery of fraud...
4. Failure to comply with written loss control recommendations...
5. Material change in risk...
6. Determination by the Commissioner... that would jeopardize a company's solvency...
7. Violation or breach by the insured...
8. Such other reasons that are approved by the commissioner."

None of the above reasons for cancellation exist in the present case. CNA is not permitted to cancel the policy without existence of one or more of the above conditions.

## T.C.A. 56-7-1805 provides for a 60 day notice also.

The statutes contemplate a 60 day notice before cancellation of a

5

commercial policy. T.C.A. 56-7-1805 provides for a 60 day notice in a renewal situation. "The insurer is required to extend the existing policy sixty (60) days from the date such notice is provided."

The statutes are consistent, sixty (60) day notice must be provided.

### T.C.A. 56-7-1806 provides notice not less than 60 days.

T.C.A. 56-7-1806 provides for a sixty (60) day notice to raise the rates or factors which increase is more than 25%, "... not less than sixty (60) days' notice of its intention to increase the rates and/or factors, specifying the percentage of increase."

Even if the collateral is classified as a premium, a sixty (60) day notice is required. CNA did not comply.

Parenthetically, CNA also did not comply with the requirement to specify the percentage of increase. CNA simply required additional collateral without specifying the percentage of increase. CNA did not comply with statutory requirements for increase of premiums.

### The insurance confirmation letter does not alter or amend the policy.

Attached to the affidavit of Clarence Easterday as exhibit 5 is a document called an "insurance confirmation letter". The insurance confirmation letter at page 2 states. "In case of any conflict between the provisions of this letter, and the referenced agreements and insurance policies, the provisions of agreements and the policies between parties shall govern." On page 8 of the insurance

confirmation letter, there is a provision that provides for 60 day cancellation by the insurance company of the policy "(except 10 days, or any greater notice required by law, if for nonpayment of premium or failure to deliver or adjust collateral as required under the program.)" However since the terms of the policy itself did not provide for 10 day cancellation or failure to adjust collateral, the 60 day cancellation in the policy applies. The insurance confirmation letter itself states that it "shall not be construed as amending or altering the actual insurance afforded by the policy."

## IMMEDIATE AND IRREPARABLE HARM WILL RESULT TO WESTERN.

### CNA has committed an unfair trade practice under T.C.A. 56-7-1807

T.C.A. 56-7-1807 provides that "failure to comply with the provisions of this part shall be considered to be unfair trade practice under T.C.A. 56-8-104."

CNA, in its action has committed an unfair trade practice. Western has demonstrated probability of success on the merits. The injunction should be issued continuing the Temporary Restraining Order presently in force.

Injunctive relief is granted to restrain actual threat or imminent injury to one's rights. State ex re. Baird. V. Wilson County, 212 Tenn. 619, 371, S.W. 2d 434 (1963); King v. Elrod, 196 Tenn. 378, 268 S.W. 2d 103 (1953). Where the award of compensatory damages is not a full, adequate and complete remedy for the violation of a legal or equitable right, Tennessee law provides that injunctive relief is proper to enjoin the violation of such right. Wise v. McCanless, 183 Tenn.

7

107, 191 S.W. 2d 169 (1945).

Rule 65.04 of the Tennessee Rules of Civil Procedure provides that a temporary injunction be granted if its clearly shown by the Verified Complaint Affidavit or other evidence that the applicants rights are being or will be violated by the adverse parties and the applicant will suffer irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual. Courts generally weigh four factors in deciding whether injunctive relief is appropriate:

1. Whether a substantial likelihood exists that the party seeking relief ultimately will succeed on the merits;

2. Whether it is likely that the party seeking preliminary relief will suffer irreparable harm if the relief is not granted;

3. Whether preliminary relief would cause disproportionate harm to the other party and;

4. Whether granting preliminary relief would protect the public interest.

See Molton Company v. Eagle-Pitcher Industries, 55F.3d 1171 (6th Cir. 1995). In weighing these factors, it is clear that the preliminary relief requested by Western should be granted.

**Substantial likelihood exists that Western will succeed on the merits.**

Defendants are clearly in violation of the terms of the policy. Proper notice was not afforded Western. CNA is in violation of T.C.A. 56-7-1803, and/or T.C.A. 56-7-1806 and has committed an unfair trade practice as defined in 56-7-1807.

8

**It is likely that Western will suffer irreparable harm if the relief is not granted.**

There is no question that Western has suffered immediate and irreparable harm and will continue to if the injunction is not granted to continue the Temporary Restraining Order in force. Workers' compensation insurance is a statutory requirement for Western to operate. The damage to relations with employees would be immediate and irreparable. See affidavit of Easterday in support of Temporary Restraining Order.

The function of the Temporary Restraining Order is to preserve the status quo pending resolution of issues raised in litigation. Should the injunction not be granted, Western would not be able to effectively litigate the issues raised in its petition because the effects of any decision would come too late to prevent any potential harm that would arise from the cancellation of Western's workers' compensation policy. Preliminary injunctive relief is therefore not only appropriate, but is called for in this action.


**Preliminary relief would not cause disproportionate harm to defendants.**

The granting of relief will not cause substantial harm to CNA. The defendants will only be restrained from early cancelling Western's workers' compensation policy. Western has paid the premiums. CNA has $9,000,000.00 profit. Because of the large deductible of $1,000,000.00, CNA has never paid a workers' compensation loss. The remaining term is only three months. See

9

Affidavit of Easterday. There has been no demonstrated disproportionate harm to defendants by granting the injunction to continue the Temporary Restraining Order.

### Granting preliminary relief would protect the public interest.

Western submits that granting the terms temporary relief requested will protect the public interest because the public has the right to rely upon the laws of this state, general concepts of contract law, and general freedom from legal interference and unfair trade practices. Workers' compensation insurance is a matter of public policy in the public interest and violation of provisions there of should be protected.

### CONCLUSION

For the foregoing reasons, Western respectfully requests the Court to grant the temporary injunction to continue the Temporary Restraining Order. Western is seeking injunctive relief because injunctive relief is the only remedy sufficient in scope to prevent further injury to Western. CNA is in violation of the terms of its policy. Proper notice was not afforded Western. CNA is in violation of T.C.A. 56-7-1803, and/or T.C.A. 56-7-1806 and has committed an unfair trade practice as defined in T.C.A. 56-7-1807. There is a substantial likelihood that Western will ultimately succeed on the merits. Western has demonstrated irreparable and immediate harm if relief is not granted. There is no disproportionate harm to CNA and granting of the relief will protect the public interest.

10

Respectfully submitted,

_Isham B. Bradley_ #5075
Isham B. Bradley #5075
Roland M. Lowell #3874
7135 Centennial Place
Nashville TN 37209
(615) 259-9920
(615) 259-9811
ibraddley@westernexp.com
rlowell@westernexp.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via facsimile and by depositing it in the United States mail, first-class, postage prepaid, addressed to the following:

Ronald G. Harris
Neal & Harwell, PLC
150 Fourth Avenue North, Suite 2000
Nashville, TN 37219

This _25th_ day of May 2007.

_Roland M. Lowell_ #3874
Roland M. Lowell    #3874

11