# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **WESTERN EXPRESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:07-0667** |
| | ) | **Judge Trauger** |
| **CONTINENTAL CASUALTY COMPANY** | ) | |
| **and AMERICAN CASUALTY COMPANY** | ) | |
| **OF READING, PA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion for Summary Judgment. (Docket No. 32.) For the reasons discussed herein, the defendants' Motion for Summary Judgment on the plaintiff's cause of action will be granted. However, the defendants' Motion for Summary Judgment on their counterclaim will be denied, and, instead, the defendants' counterclaim will be dismissed, without prejudice, for lack of subject-matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an insurance contract dispute between the plaintiff, Western Express, Inc., and its former insurer, defendants Continental Casualty Company and American Casualty Company of Reading, PA (collectively known as "CNA").[1] For the several years prior to the

---

[1]Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Nos. 34 and 43) and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith*

1

events giving rise to this case, CNA provided insurance to Western Express, including insurance coverage for workers' compensation, general liability and automobile liability. The insurance contracts entered into by Western Express and CNA required that Western Express post collateral with CNA, which secured the payment of Western Express's future contractual obligations, such as deductible payments. At the time an insured and an insurance company enter into an insurance contract, it is often not possible to know precisely how much the insured's obligations to the insurance company will be, because it is not possible to predict the exact claims that will arise against the insured during the policy period. Therefore, the amount of collateral that an insured is to pay to an insurance company to secure these obligations is often arrived at by use of a predictive model or formula. The dispute over which formula the parties agreed to use here, if any formula at all, is at the heart of this litigation.

As of the summer of 2006, Western Express paid collateral to CNA based on a "150 percent of reserves" formula. Also in the summer of 2006, the parties began negotiating the terms of their insurance agreement for the policy year beginning September 1, 2006. Negotiating on behalf of Western Express was Seth Maxwell, an insurance broker from Scott Insurance, and negotiating on behalf of CNA was Jessica McKoy, an insurance underwriter for CNA. Also involved in the process was Clarence Easterday, who is the Executive Vice-President of Western Express.

After some initial negotiations, on July 31, 2006, McKoy sent CNA's initial insurance proposal to Maxwell. This proposal offered to insure Western Express with collateral calculated

---

*Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

based on the "150 percent of reserves" formula and, based on this formula, required Western Express to pay an additional $6.9 million in collateral for the upcoming policy year. On behalf of Western Express, Maxwell balked at this offer and informed CNA that Western Express had better collateral offers from CNA's competitors. After further discussions, on August 4, 2006, McKoy sent Maxwell an e-mail describing a revised proposal, which she would send Maxwell on the following Monday, August 7, 2006. As described in the e-mail, this proposal called for Western Express to post $2.4 million in collateral at the inception of the policy and called for quarterly collateral reviews by CNA to assess whether Western Express owed additional collateral.

Importantly, as mentioned in the e-mail, the proposal changed the collateral calculation formula from "150 percent of reserves" to "ultimate loss pick," which would calculate collateral based on the ultimate expected losses for the year less the amount paid to date.[2] Maxwell simply responded "thanks" to McKoy's e-mail (Maxwell Dep. Ex.. 8), and McKoy sent the actual proposal, with the change in collateral calculation formula, to Maxwell on August 7, 2006. Maxwell subsequently forwarded the proposal to Easterday at Western Express. Apparently, neither Maxwell or Easterday grasped that CNA was proposing a significant change in the collateral calculation formula, and they assumed that the "150 percent of reserves" method would continue to be in place for the policy year beginning September 1, 2006. (Docket No. 35 Ex. 5 at 64.)

---

[2]An understanding of the details of the two formulas is unnecessary; suffice it to say that Western Express was comfortable with the "150 percent of reserves" method and believed the "ultimate loss pick" method would require the company to post more collateral, thereby reducing cash on hand. (Docket No. 38 at 3-4.)

3

For the next few weeks, the parties negotiated other aspects of the insurance agreement. Finally, on August 31, 2006, following the resolution of an unrelated deductible issue, another Scott Insurance agent, Katie Molitor, e-mailed Easterday and asked, in light of the resolution of that deductible issue, whether it was "okay to bind coverage effective September 1," to which Easterday replied "Yes. Please bind this. Thank you." (Maxwell Dep. Ex. 13.) Maxwell forwarded this e-mail exchange to McKoy, and, through an exchange of e-mails, the parties confirmed that they had an insurance agreement in place. (Maxwell Dep. Exs. 14-15.)

On September 13, 2006, CNA sent a confirmation letter to Western Express, which set forth the terms of the insurance arrangement, including that collateral would be calculated based on the "ultimate loss pick" formula for the policy year beginning September 1, 2006. At approximately the same time, CNA also sent Western Express a Finance Agreement to be executed in connection with the renewal of the insurance program, which also described the collateral calculation method.

After receiving these materials, Easterday made several handwritten changes to the confirmation letter and the Finance Agreement, the most relevant of which was that he crossed through the language in both documents that set forth the "ultimate loss pick" collateral calculation formula and, in its place, Easterday inserted language stating that the collateral would be calculated based on the previously used "150 percent of reserves" formula. On receipt of these materials, CNA noticed Easterday's hand-written corrections. In a November 1, 2006 e-mail, McKoy informed Maxwell that Easterday's hand-written corrections were not acceptable to CNA.

Over the next several months, the once-positive business relationship between CNA and Western Express deteriorated over this issue of how the amount of collateral was to be calculated.

4

In December 2006, following a quarterly collateral evaluation, CNA advised Western Express that additional collateral, $2.5 million, was due. Western Express, while not challenging the accuracy of the figures, claimed that a different formula should have been used to calculate whether any additional collateral was due. Western Express flatly refused to pay CNA any additional collateral.

In an effort to see if a solution to the stalemate could be reached, CNA and Maxwell agreed that Western Express should have until March 1, 2007 to post the additional collateral. March 1, 2007, however, came and went without Western Express posting any additional collateral. Finally, after numerous failed attempts to get Western Express to post additional collateral, by notice dated April 24, 2007, CNA advised Western Express that its insurance would be canceled on May 16, 2007. The parties subsequently extended the cancellation date to May 23, 2007. In the notice, the reason stated for the cancellation was "failure to provide collateral security nonpayment of premium." (Docket No. 1 Ex. 1.)

On May 22, 2007, Western Express filed a Complaint in the Chancery Court of Davidson County, Tennessee, seeking a temporary injunction against the cancellation of the insurance policy. After granting the temporary injunction, on May 29, 2007, the Chancery Court denied Western Express' request for a permanent injunction against cancellation, and the policy was ultimately canceled. Western Express was able to obtain replacement insurance with no gap in coverage.

On June 8, 2007, Western Express filed its Amended Complaint in the Chancery Court of Davidson County, asserting that CNA had violated its insurance agreement with Western Express and seeking a return of all premiums paid for the policy year. On June 20, 2007, CNA removed

5

the case to this court. On November 2, 2007, CNA filed its counterclaim in this case. (Docket No. 16.)

After discovery, CNA filed its Motion for Summary Judgment on September 30, 2008, seeking summary judgment on both Western Express's cause of action and its counterclaim. This motion has been fully briefed.

## ANALYSIS

The plaintiff, Western Express, claims that the defendant, CNA, breached certain notice provisions in the relevant insurance contracts, and, therefore, Western Express is entitled to the return of all the premiums it paid CNA during the policy year beginning September 1, 2006. CNA counterclaims that Western Express has liability to CNA for deductibles and other costs related to claims against Western Express that arose prior to the cancellation of the insurance policies at issue. CNA currently uses Western Express's previous collateral payments to pay those deductibles and other costs, and, therefore, CNA also counterclaims that Western Express has a responsibility to pay additional collateral to CNA to offset the draw downs in Western Express's collateral. CNA has moved for summary judgment on Western Express's cause of action and on its counterclaim. For the reasons discussed below, CNA's Motion for Summary Judgment will be granted as to Western Express's cause of action against CNA, but CNA's counterclaim will be dismissed, without prejudice, for lack of jurisdiction, as the claim is unripe.

## I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

6

law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary

7

judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Motion For Summary Judgment on Western Express's Cause of Action

        In support of its Motion for Summary Judgment on Western Express's cause of action, defendant CNA makes two central arguments: (1) that Western Express's damages claim is legally insufficient and, therefore, Western Express's cause of action should be dismissed; and (2) that, even if the damages claim was legally sufficient, CNA would still be entitled to judgment as a matter of law because CNA did not breach the insurance agreements in providing the notice it did before canceling the policies at issue. (Docket No. 33.) Because CNA's position on the first point is well-founded, CNA is entitled to judgment as a matter of law, and Western Express's cause of action against CNA will be dismissed.

        To understand the basis for the judgment in CNA's favor, it is important to recognize the nature of Western Express's cause of action. Importantly, the relevant insurance policy agreements permitted CNA to cancel the particular policy for any reason, so long as CNA provided sixty days notice to Western Express. (Docket No. 38 at 9.) An exception to that rule requiring sixty days notice was that CNA could cancel the particular policy with only ten days notice if the basis for the cancellation was "nonpayment of premium." (*Id.*) Here, as noted above in the factual discussion, CNA provided Western Express slightly less than one month's notice of cancellation for all of the policies at issue. Therefore, the plaintiff claims that, because "nonpayment of collateral" is not the same thing as "nonpayment of premium," CNA is in breach of the insurance policy agreements in this case for failing to provide sufficient notice of

8

cancellation[3]. (*Id.* at 14.) CNA, in its second central argument, argues that collateral should be, for purposes of this case, considered premium and, therefore, it did not breach the insurance policies at issue because it provided sufficient notice for cancellation based on "nonpayment of premium." (Docket No. 33 at 14.) It is not necessary to reach this issue, however, because Western Express has shown no damages stemming from any breach of the insurance agreements.

It is well-settled that, in Tennessee, a viable claim for breach of contract has three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract; and (3) damages *caused by* the breach of the contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W. 3d 367, 374 (Tenn. Ct. App. 2006). Importantly, Western Express does not claim that the alleged breach caused it any specific damage, such as higher replacement coverage costs resulting from the supposedly inappropriate notice.[4] Rather, Western Express simply asserts that, as a matter of right, it is entitled to the return of the premiums it paid to CNA for the policy year beginning September 1, 2006. In support of this view, Western Express relies on two Tennessee cases, *Kentucky Home Mut. Life Ins. Co. v. Rogers,* 270 S.W. 2d 188 (Tenn. 1954) and *National Life & Accident Ins. Co. v. Hamilton*, 98 S.W. 2d 107 (1936). (Docket No. 38

---

[3] In its Amended Complaint, Western Express claimed that, if the court considered "collateral" as "premium," then CNA was in violation of a provision of Tennessee law that requires a particular type of notice be given by the insurer when it intends to increase premiums by more than 25 percent and "the increase in premium is the result of comparing policies of equivalent exposures." (See Am. Complaint at 3, citing T.C.A. § 56-7-1806.) In briefing, Western Express appears to have abandoned this theory of liability, ignoring CNA's arguments as to why the statute does not apply, making no arguments in advance of its position, and focusing on its argument that "collateral" is distinct from "premium." (See Docket No. 38 at 13-14.)

[4] Indeed, as CNA points out in its brief, Western Express specifically disclaimed this theory of recovery in an interrogatory response. (Docket No. 33 at 10.)

9

at 14-15.)

These cases do not hold that, as Western Express would have it, a relatively minor and technical breach of an insurance contract automatically results in the insured's being entitled to recover all of the premiums it paid; rather these cases rest on the standard notion that, when a contract is breached, the plaintiff is entitled to the fair measure of damages sustained. *See Rogers*, 270 S.W. 2d. at 192; *Hamilton*, 98 S.W. 2d at 108. Indeed, in both of these cases, the Tennessee Supreme Court endorsed the return of the premiums the insured paid as a fair measure of damages in the life insurance context. In that context, when the insurance company breaches a life insurance contract prior to the insured's death, one way to make the insured whole is simply to return the premiums the insured paid, as the living insured has received no benefit in exchange for the premiums the insured paid. *See Hamilton*, 98 S.W. 2d at 108 (distinguishing the life insurance context from other areas of insurance, stating "[t]he reason for permitting the recovery of the whole amount of premiums paid upon breach of a life insurance contract by the insurer is that, while the insured may be said to have protection during the currency of the policy, he has received no actual and appreciable advantage therefrom.")[5]

Western Express ignores these clear factual and logical distinctions and doggedly argues

---

[5] A more recent case citing *Rogers* clarifies that return of premiums paid does not constitute the automatic measure of recovery for an insured when the insurance company breaches the insurance contract. *See Walker v. Permanent Gen. Assurance Co.*, 1993 WL 523637, *2 (Tenn. Ct. App. Dec. 13, 1993) ("The general rule in Tennessee is that where an insurer wrongfully cancels an insurance contract, the insured may ... recover the just value of the policy, or such measure of damages as the court in its particular jurisdiction approves.")

.

10

that it is somehow entitled to receive back the premiums it paid because, based on the two cases cited above, "return of premiums paid is the preferred measure of damages in Tennessee." (Docket No. 38 at 15.)  Western Express is simply incorrect, and, as discussed above, the cases relied on by Western Express are factually and logically distinguishable.  Here, unlike the situation described in *Hamilton* and *Rogers*, it is undisputed that Western Express received substantial value in exchange for the premiums it paid, that is, during the life of the policy, CNA provided insurance coverage, and CNA continues to provide claim handling and payment for claims that arose during the policy period.  In stark contrast to the situations discussed in *Hamilton* and *Rodgers*, forcing CNA to return the premiums paid would unjustly enrich Western Express, which would have received the insurance coverage service essentially for free.

Therefore, even assuming CNA breached the insurance contract at issue, Western Express is not, automatically, entitled to the return of the premiums it paid.  Also, as noted above, Western Express does not claim it suffered any actual damages from the supposedly improper notice of cancellation.  Therefore, Western Express has no supportable theory of damages in this breach of contract case.  As Western Express has failed to meet its burden as to an essential element of its breach of contract claim, CNA is entitled to summary judgment on Western Express's cause of action.

### III.    Motion For Summary Judgment on CNA's Counterclaim

In its counterclaim, CNA alleges that it has been (or will be) damaged in two ways.  First, CNA alleges that, as of August 2007, Western Express has stopped paying CNA the deductibles and other costs Western Express owes for claims that arose against Western Express during the

11

2006-2007 policy year and for prior policy years.  (Docket No. 33 at 21.)  Indeed, it is undisputed that CNA, pursuant to the insurance policy agreements, is continuing to pay these claims, and it is also undisputed that Western Express has stopped paying CNA the deductibles and other costs associated with those claims.  (Docket No. 33 at 21-22.)  To cover Western Express's failure to pay, CNA draws on the collateral previously posted by Western Express.  (*Id.* at 22.)  In sum, CNA argues that Western Express has "no valid excuse" for its continuing refusal to pay the deductibles and other costs, and that the court "should grant summary judgment that CNA is entitled to receive the amounts it is billing (and has billed) Western Express that are attributable to CNA's payments on Western Express's behalf."  (*Id.*.)

Second, CNA alleges that Western Express's continuing failure to pay collateral causes CNA to be under-secured.  (Docket No. 33 at 23.)  As noted above, CNA is currently recouping Western Express's deductibles and other costs from the collateral that Western Express previously paid CNA, drawing down the money that is supposed to be used as security for Western Express's obligations for claims that may arise in the future.  (*Id.*)  To prevent this situation from getting worse, CNA argues that the court "should enter a declaratory judgment ordering Western Express to post collateral" to secure its future payments to CNA, preferably based on the "ultimate loss pick" formula but, at the very least, based on the "150 percent of reserves" formula.  (*Id.* at 23-24.)  CNA warns that, without judicial intervention, CNA's security "will soon be depleted," and, therefore, the court should order that Western Express post additional collateral.  (Docket No. 40 at 16.)

In response, Western Express does not dispute that it is not actively paying deductibles or collateral but argues that CNA is acting prematurely.  (Docket No. 38 at 17.)  Western Express

states that, for the time being, it makes deductible payments to CNA by allowing CNA to draw down the collateral that Western Express previously paid to CNA. (*Id.*) Western Express assures the court that it has every intention of making CNA whole, stating that, "once the collateral is exhausted, Western Express intends to keep making the proper payments." (*Id.*) Western Express argues that CNA's remedy should be to sue Western Express if and when Western Express fails to make the necessary reimbursements under the insurance policies. (*Id.*) In response, CNA argues that "the collateral is to secure future payment, not be the source of payment." (Docket No. 40 at 16.)

In arguing that "CNA's remedy should be to sue Western Express if and when Western Express fails to make the necessary reimbursements ...", Western Express is implicitly asserting that CNA's counterclaim is not ripe. (Docket No. 38 at 17.) The court agrees, and, therefore, CNA's counterclaim will be dismissed, without prejudice. *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008) ("If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.")

When evaluating whether a claim is ripe, the key factors to consider are: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits. *Id.* at 561. Consideration of all three of these factors shows that CNA's claim is not ripe.

First, the primary harm alleged by CNA is that Western Express's collateral fund will be eventually exhausted and CNA will not be able to receive deductible payments and other costs from Western Express. This harm may very well not come to pass. Indeed, there appears to be no

13

guarantee that the collateral already contributed by Western Express will be insufficient to cover the deductible payments and other costs.[6]  More importantly, Western Express has all but promised this court that the harm will not come to pass, asserting in its briefing that it will "assure its deductible amounts and other costs are properly reimbursed to CNA."  (Docket No. 38 at 17.)

Second, there is no significant hardship to CNA if judicial relief is denied at this stage of the proceedings.  As of the date of its last summary judgment brief, CNA was using Western Express's money to recover deductibles and other costs that Western Express owes.  While the lack of "fresh" money from Western Express might cause CNA some mild concern that the Western Express fund will be eventually exhausted, that is an intangible, and relatively scant, hardship, particularly in light of Western Express's assurances before this court that it will honor its deductible obligations.  Indeed, both of CNA's arguments are based on the speculation that CNA will incur damages at some point in the future, when CNA exhausts Western Express's collateral reserve and, therefore, no longer has a Western Express donated fund from which to collect Western Express's deductible payments.  When that time arrives, Western Express has promised to pay the claim deductibles and other costs to CNA, and the court fully expects Western Express to do that.

Finally, as CNA acknowledges, the factual record is clearly in flux and still developing: "CNA ... cannot seek a specific dollar amount at this time [because] the numbers keep changing.

_____

[6]CNA does not state what specific amounts it claims it is owed, what specific amounts it will be owed in the future, and CNA does not offer any method for the court to calculate such an amount.  Rather, CNA simply states that "the court should grant summary judgment declaring [Western Express'] liability and responsibilities for these on-going obligations."  (Docket No. 40 at 17.)

14

As CNA keeps paying out money on Western Express's claims, Western Express's liability to CNA is increasing."  (Docket No. 40 at 15.)  The "churning" nature of the factual record is further support for the notion that this claim is not ripe.  Therefore, as this court lacks subject-matter jurisdiction over CNA's counterclaim, that claim will be dismissed, without prejudice.

## CONCLUSION

For the reasons discussed above, CNA is entitled to summary judgment on Western Express's cause of action against it, and CNA's counterclaim against Western Express must be dismissed, without prejudice, for lack of subject-matter jurisdiction.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge .

15